**No. 13-7081**
**ORAL ARGUMENT NOT YET SCHEDULED**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**ALAN J. BAUER, DR.,**

*Plaintiff-Appellant,*

v.

**MAVI MARMARA, AUDACITY OF HOPE, RACHEL CORRIE, CHALLENGER I, CHALLENGER II (a/k/a The Saoirse), GAZZE, TALI, ARION, SFENDONI ("Boat 8000"), TAMARA (a/k/a Eleftheri Mesoghios), SEVEN Y TWO ("Irene"), FINCH, TAHRIR, STEFANO CHIRIANI and all right, title and interest in each of them,**

*Defendants-Appellees, in rem*

**UNITED STATES OF AMERICA**,

*Interested Party-Appellee*

---

**On Appeal from the United States District Court**
**for the District of Columbia**

---

# BRIEF FOR THE PLAINTIFF-APPELLANT

---

**ASHER PERLIN**
**Florida Professional Law Group, PLLC**
1799 West Oakland Park Blvd.
Third Floor
Ft. Lauderdale, FL 33310
(954) 302-3026
*Attorney for Plaintiff-Appellant*
*asher@asherperlin.com*

**APPELLANT'S CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), Appellant Dr. Alan J. Bauer ("Dr. Bauer") certifies as follows:

**A. Parties, Intervenors, and Amici.**

1. The appellant is Dr. Alan J. Bauer, the plaintiff in the case below.

2. The appellees are the following defendants from the case below, *in rem*: Mavi Marmara (and all right, title, and interest therein), Audacity of Hope (and all right, title, and interest therein), Rachel Corrie (and all right, title, and interest therein), Challenger I (and all right, title, and interest therein), Challenger II (a/k/a The Saoirse) (and all right, title, and interest therein), Gazze (and all right, title, and interest therein), Tali (and all right, title, and interest therein), Arion (and all right, title, and interest therein), Sfendoni (Boat 8000) (and all right, title, and interest therein), Tamara (a/k/a Eleftheri Mesoghios) (and all right, title, and interest therein), Seven Y Two (Irene) (and all right, title, and interest therein), Finch (and all right, title, and interest therein), Tahrir (and all right, title, and interest therein), and Stefano Chiriani (and all right, title, and interest therein).

3. Also an appellee is the United States of America. In an order dated June 5, 2012, pursuant to 28 U.S.C. § 517, the trial court requested that the United States file a Statement of Interest regarding the standing of the plaintiff to bring

this action. The United States filed a Statement of Interest requesting the court to dismiss for lack of standing.

**B. Rulings Under Review.**

The ruling under review is the April 18, 2013 Order and Memorandum Opinion entered by the district court (Contreras, J.) in Civil Action No. 11-cv-01267 dismissing plaintiff's action, *sua sponte*. Appx. 15-32. The Opinion under review has no official citation. However, it has been published at *Bauer v. Mavi Marmara*, 2013 U.S. Dist. LEXIS 55636 (D.D.C. 2013).

**C. Related Cases.**

The case on review has not previously been before this or any other court, with the exception of the trial court below (cited in Section II, above). Undersigned counsel is not aware of any related cases.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant, Dr. Alan J. Bauer requests that oral argument be allowed pursuant to Fed. R. App. P. 34(a). Oral argument may significantly assist the Court in deciding the issues in this appeal.

## TABLE OF CONTENTS

*Page*

JURISDICTIONAL STATEMENT ....................1

STATEMENT OF ISSUES FOR REVIEW ....................2

PERTINENT STATUTES AND REGULATIONS ....................3

INTRODUCTION....................4

STATEMENT OF PERTINENT FACTS ....................6

A. Anti-Israel Groups Organize to Breach the Israel Maritime Blockade of Gaza ....................6

B. Dr. Bauer Informs the United States of Violations of § 962, and Files Suit Seeking Forfeiture of the Defendant Vessels ....................7

C. The District Court Orders Dr. Bauer to Show Cause Why the Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction Due to Lack of Standing and then Solicits the Government's Opinion as to Dr. Bauer's Standing....................8

D. The District Court Holds that Section 962 Does not Provide a Private Right of Action and Dismisses the Action for Failure to State a Claim Upon Which Relief May be Granted ....................10

SUMMARY OF ARGUMENT ....................11

ARGUMENT ....................14

STANDARD OF REVIEW ....................14

A. THE TRIAL COURT DISREGARDED 200 YEARS OF LEGAL AUTHORITY WHEIN IT ELIMINATED THE PRIVATE RIGHT OF ACTION THAT WAS IMPLICIT IN SECTION 962. ....................14

1. The trial court erred in dismissing as "flawed" Supreme Court precedents indicating that bounty statutes like Section 962

**TABLE OF CONTENTS *(continued)***

***Page***

provide informers with private rights of action. ....................................... 15

2. Numerous courts have held Section 962 and other similar statutes to provide a private right of action to informers ............................ 20

3. Cases cited by the court for the proposition that the right of Neutrality Act informers to sue had diminished over time are inapposite ....................................................................... 23

B. THE TRIAL COURT STATED NO SOUND BASIS FOR FINDING THAT NEUTRALITY ACT INFORMERS' RIGHT TO SUE HAD DIMINISHED OVER TIME ....................................................................... 25

C. THE TRIAL COURT IMPREOPERLY ATTEMPTED TO "BUTTRESS" ITS HOLDING WITH INAPPLICABLE ARGUMENTS THAT NEITHER ON THEIR OWN NOR IN COMBINATION SHOULD AFFECT THE OUTCOME OF THIS CASE ............................................................ 28

CONCLUSION ........................................................................................ 31

CERTIFICATE OF COMPLIANCE ............................................................ 32

CERTIFICATE OF SERVICE .................................................................... 33

# TABLE OF AUTHORITIES

***Page***

***CASES***

*Adams v. Woods*,
6 U.S. 336 (1805) ........ 17, 22

*Canning v. NLRB*,
705 F.3d 490 (D.C. Cir. 2013) ........ 29

*City of Mexico*,
28 F. 148 (S.D. Fla. 1886) ........ 22

*Connecticut Action Now, Inc. v. Roberts Plating Co.*,
457 F.2d 81 (2d Cir. 1973) ........ 19

*Gelston v. Hoyt*,
16 U.S. 246 (1818) ........ 22

*Jacklovich v. Interlake, Inc.*,
458 F.2d 923 (7th Cir. 1972) ........ 19

* *Marcus v. Hess*,
317 U.S. 537 (1943) ........ 11, 14-20, 24 29

*Marvin v. Trout*,
199 U.S. 212 (1905) ........ 16

*Morrow v. Balaski*,
719 F.3d 160 (3d Cir. 2013) ........ 15

*Olivier v. Hyland*,
186 F. 843 (5th Cir. 1911) ........ 23-25

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) ........ 26

Authorities upon which we chiefly rely are marked with asterisks

**TABLE OF AUTHORITIES**
***(continued)***

***Page***

* *The Three Friends*,
166 U.S. 1 (1897) ........................................................................ 25, 28

*The Venus*,
180 F. 635 (D. La. 1910) .............................................................. 23-25, 27

*United States v. Bloom*,
149 F.3d 649 (7th Cir. 1998) ........................................................ 15-16

*United States v. Laescki*,
29 F. 699 (N.D. Ill. 1887) ............................................................ 21, 22

*United States v. Merrill*,
685 F.3d 1002 (11th Cir. 2012) .................................................... 14

*United States v. Skinner*,
27 F. Cas. 1123 (C.C.D.N.Y. 1818) ............................................. 22

*United States v. Tilden*,
28 F. Cas. 179 (C.C.D. Mass. 1859) ............................................ 21

* *Vermont Agency of Natural Resources v. United States, ex rel., Stevens*,
529 U.S. 765 (2000) ............................................ 6,12, 14-15, 18, 20, 24, 29, 30

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................... 20

*West Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83 (1991) ....................................................................... 13, 26

***STATUTES***

***Page***

* 18 U.S.C. § 962 .......................................................................... 1-29

28 U.S.C. § 517 ..........................................................................9

28 U.S.C. § 1291 ..........................................................................2

28 U.S.C. § 1331 ..........................................................................1

28 U.S.C. § 1355 ..........................................................................1

31 U.S.C. §§ 3729-3733 ..........................................................................18

**LAW REVIEWS**

Eugene Kontorovich, *Discretion, Delegation, and Defining in the Constitution's Law of Nations Clause*, *106 NW. U.L. Rev. 1675 (2012)* ..........................................................................5

**No. 13-7081**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**ALAN J. BAUER, DR.,**

*Plaintiff-Appellant,*

v.

**MAVI MARMARA, AUDACITY OF HOPE, RACHEL CORRIE, CHALLENGER I, CHALLENGER II (a/k/a The Saoirse), GAZZE, TALI, ARION, SFENDONI ("Boat 8000"), TAMARA (a/k/a Eleftheri Mesoghios), SEVEN Y TWO ("Irene"), FINCH, TAHRIR, STEFANO CHIRIANI and all right, title and interest in each of them,**

*Defendant-Appellees, in rem*

**UNITED STATES OF AMERICA**,

*Interested Party-Appellee.*

---

**On Appeal from the United States District Court**
**for the District of Columbia**

---

**BRIEF FOR THE PLAINTIFF-APPELLANT**

---

## STATEMENT OF JURISDICTION AND THE CASE

The District Court had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1355. Plaintiff-Appellant, Dr. Alan Bauer, filed this action pursuant to an informer provision contained within the Neutrality Act, 18 U.S.C. § 962. The

Complaint demanded civil forfeiture, *in rem*, of fourteen vessels that had been employed in violation of Section 962 "for hostile use against a foreign country that is at peace with the United States." On April 18, 2013, the District Court found that Section 962 did not provide a private cause of action and entered an order, *sua sponte*, dismissing the action in its entirety for failure to state a claim upon which relief may be granted. Appellant filed a timely Notice of Appeal on May 17, 2013. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

**STATEMENT OF ISSUES FOR REVIEW**

1. Whether the trial court erred in dismissing Dr. Bauer's action where explicitly discounted extensive authority from the Supreme Court and lower federal courts and held that the informer provision of the Neutrality Act, 18 U.S.C. § 962, does not provide a right of action to an informer who is statutorily entitled to one half of the bounty recovered in a civil forfeiture under the statute.

2. Whether, after acknowledging that at common law informer statutes such as 18 U.S.C. § 962 implicitly provided informers with a right to sue; and where no court had yet held that an informer lacks a right of action under Section 962; and where Congress had not amended the substance of the bounty provision of Section 962 since its enactment, the trial court erred in dismissing Dr. Bauer's

action and holding that an informer's power to bring suit under Section 962 had "diminished over time."

3. Whether the trial court erred in "buttressing" its dismissal with findings that Section 962 implicates foreign relations and that the forfeiture provision of Section 962 are criminal in nature, where neither rationale legally or factually supports dismissal of Dr. Bauer's action.

## PERTINENT STATUTES AND REGULATIONS

18 U.S.C. § 962 provides as follows:

**Sec. 962. Arming vessel against friendly nation**

> Whoever, within the United States, furnishes, fits out, arms, or attempts to furnish, fit out or arm, any vessel, with intent that such vessel shall be employed in the service of any foreign prince, or state, or of any colony, district, or people, to cruise, or commit hostilities against the subjects, citizens, or property of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace; or
>
> Whoever issues or delivers a commission within the United States for any vessel, to the intent that she may be so employed--
>
> Shall be fined under this title or imprisoned not more than three years, or both.
>
> Every such vessel, her tackle, apparel, and furniture, together with all materials, arms, ammunition, and stores which may have been procured for the building and equipment thereof, shall be forfeited, one half to the use of the informer and the other half to the use of the United States.

## INTRODUCTION

Title 18 U.S.C. § 962 (the "Statute") makes it illegal to furnish, arm, fit out, or attempt to furnish, arm or fit out any vessel for hostile use against a foreign country that is at peace with the United States. The Statute contains a criminal penalty section providing for fines or imprisonment of individual violators. It also contains a separate civil *in rem* forfeiture provision that disposes of any vessel employed for such purposes. The forfeiture provision is a classic "informer" or "bounty" statute that rewards an informer with a share in the proceeds of the forfeiture. The forfeiture provision states:

> Every such vessel, her tackle, apparel, and furniture, together with all materials, arms, ammunition, and stores which may have been procured for the building and equipment thereof, shall be forfeited, one half to the use of the informer and the other half to the use of the United States. 18 U.S.C. § 962.

Plaintiff/Appellant, Dr. Alan J. Bauer, filed the instant action pursuant to 18 U.S.C. § 962 seeking forfeiture of fourteen vessels that were furnished or fitted out for purposes of committing hostilities against Israel, a foreign country with which the United States is at peace. The trial court found that Section 962 does not authorize informers to initiate suit and dismissed Dr. Bauer's action *sua sponte*. Dr. Bauer appeals.

This appeal revolves around the narrow question of whether the bounty provision of the Neutrality Act contained within 18 U.S.C § 962[1] provides a private cause of action for an informer who notifies the United States that individuals and organizations were furnishing and fitting out or attempting to furnish or fit out a number of specified vessels to cruise and commit hostilities against a country at peace with the United States.

The Neutrality Act, although rarely invoked in modern times, has deep roots. The Neutrality Act, originally enacted in 1794, was intended to ensure that the United States would not be unwillingly drawn into foreign conflicts generally, and in particular, the war between France and Britain. Eugene Kontorovich, *Discretion, Delegation, and Defining in the Constitution's Law of Nations Clause, 106 NW. U.L. Rev. 1675, 1709 (2012)*. At President Washington's request, Congress enacted the Neutrality Act to outlaw a wide range of conduct, including fitting out vessels for hostile activities against neutral countries. *Id*. The Statute, now found at 18 U.S.C. § 962, provided criminal penalties for violations of American neutrality. It also provided incentives, through a bounty provision, for private actors to inform the Government of any such hostile activities against friendly countries.

[1] The statute that is today found at 18 U.S.C. § 962 has historically been codified at different citations within the United States Code. However, the substance of the bounty provision has remained constant since its enactment. Citations to the Statute unless otherwise indicated will use the current citation at 18 U.S.C. § 962.

As the trial court observed, in the early days of the Republic, "bounty" or "informer" statutes like that contained within the Neutrality Act were a favored means of enforcing legal obligations. Appx. 17-18. It was not unusual for legislation to provide rewards to common informers even if they had not suffered any injury themselves. *Vermont Agency of Natural Resources v. United States, ex rel., Stevens*, 529 U.S. 765, 775 (2000). Moreover, it was widely accepted that statutes offering a bounty to common informers implicitly carried with them a private cause of action. Appx. 27-28; Stevens, 529 U.S. at 777 n. 7.

Congress has never repealed the bounty provisions of Section 962, and the substance of that provision remains identical to the 1794 original enactment. Because at the time it was enacted, Congress and the courts intended and understood Section 962 to include a private right of action, and because Congress has not amended the substance of the bounty provision since Section 962's enactment, the only reasonable construction of that provision is that it continues to carry with it an implied right of action for private informers.

## STATEMENT OF PERTINENT FACTS

### A. Anti-Israel Groups Organize to Breach the Israel Maritime Blockade of Gaza.

In 2007, the Hamas terrorist organization seized power in the Gaza Strip, and began to carry out systematic rocket and missile attacks against civilian targets in Israel. Appx. 4. The State of Israel responded to the unrelenting missile attacks

by imposing a maritime blockade on the Gaza Strip. *Id*. The purpose of the blockade was to constrain Hamas' ability to obtain the foreign material support that enabled it to carry out these attacks. *Id*.

A number of anti-Israel organizations in the United States, together with a coalition of violent and militant anti-Israel organizations from other countries, initiated organized efforts to breach Israel's blockade. *Id*. The purpose of these efforts was to harm Israel's security and to support the Hamas-controlled government in the Gaza Strip. *Id*.[2]

### B. Dr. Bauer Informs the United States of Violations of § 962, and Files Suit Seeking Forfeiture of the Defendant Vessels.

In a letter dated June 13, 2011, Plaintiff-Appellant, Dr. Bauer informed the United States Attorney General of the hostile activities of the anti-Israel groups and of their illegal purpose. Appx. 6, 9-10. Approximately one month later, having received no response from the Attorney General, Dr. Bauer filed this informer action pursuant to the forfeiture provision of the Neutrality Act, 18 U.S.C. § 962 ("Section 962" or the "Statute").

The Complaint alleged that various persons and organizations had violated Section 962 by furnishing or fitting out, or attempting to furnish or fit out the

[2] Dr. Bauer's September 12, 2011 Response to Order to Show Cause (docket number 7) at pages 4-5 and the official reports cited there provide additional facts surrounding the Hamas missile attacks on Israel and the purpose of the organizations and individuals who attempted to breach the Israeli blockade.

fourteen named vessels with the intent that those vessels be employed to commit hostilities against the State of Israel, a country at peace with the United States. The Complaint sought as relief the forfeiture, *in rem*, of the Defendant Vessels to Dr. Bauer as informer and the United States, in equal shares. Appx. 7.

### C. The District Court Orders Dr. Bauer to Show Cause Why the Action Should Not Be Dismissed for Lack of Subject Matter Jurisdiction Due to Lack of Standing and then Solicits the Government's Opinion as to Dr. Bauer's Standing.

On July 14, 2011, the district court (Kollar-Kotelly, J.)[3] entered an Order to Show Cause in which it observed that Section 962 does not expressly authorize suit by an informer. Appx. 12-13. The court stated that it was not aware of authority providing an informer with a private right of action under the statute. Appx. 12. The court then ordered the plaintiff to show cause why the action should not be dismissed for lack of subject matter jurisdiction due to lack of standing. *Id*.

On September 12, 2011, Dr. Bauer filed his response to the Order to Show Cause addressing the court's question regarding subject matter jurisdiction. Nine months later, on June 5, 2012, the court (Contreras, J.) invited the Government to

[3]Upon the filing of the Complaint, the case was assigned to Judge Colleen Kollar-Kotelly, who entered the July 14, 2011 Order to Show Cause. Subsequently, the case was reassigned to Judge Rudolph Contreras, who entered the June 5, 2012 Order requesting that the United States file a statement of interest as well as the April 18, 2013 Order and Memorandum Opinion dismissing the case.

file a Statement of Interest, pursuant to 28 U.S.C. § 517[4]. Appx. 14. The Government filed the Statement of Interest of the United States Regarding the Plaintiff's Standing to Bring Suit Under 18 U.S.C. § 962 (the "Statement of Interest") in which it argued that Dr. Bauer lacked standing to bring the instant action because the Statute did not provide him with a right of action. The government then argued in the alternative that even if Section 962 included a private right of action, "the government's participation would be required and the government here declines to participate in Dr. Bauer's suit." Statement of Interest at 6.

Dr. Bauer filed a response to the Government's Statement of Interest, and the Government filed a Supplemental Statement of Interest. The Government's Supplemental Statement of Interest again asserted only that Dr. Bauer lacked standing to sue for forfeiture and that no such action could be maintained without government participation. Supplemental Statement of Interest at 1.

The Government limited its arguments in both filings to the ***procedural*** question of whether Dr. Bauer could initiate and maintain his action. The Government conspicuously never offered a statement regarding the Government's

---

[4] 28 U.S.C. § 517 provides: "the Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United State to attend to the interests of the United States in a suit pending in a court of the United States…."

interest in allowing the Defendant Vessels to be forfeited or in having such forfeiture blocked.

The Defendant-Appellee Vessels were not served with the Complaint and never appeared in the district court prior to the *sua sponte* dismissal. No hearings were conducted and no evidence was received[5].

**D. The District Court Holds that Section 962 Does not Provide a Private Right of Action and Dismisses the Action for Failure to State a Claim Upon Which Relief May be Granted**.

On April 18, 2013, the District Court entered an order, *sua sponte*, dismissing the action in its entirety for failure to state a claim upon which relief may be granted based upon its finding that Section 962 does not provide a private right of action. Appx. 15, 16-32. After presenting a concise history of the Neutrality Act and other similar "informer" or "bounty" statutes, the court receded from the position it impliedly assumed in the Order to Show Cause, and held that Dr. Bauer had standing under Article III of the Constitution based upon his concrete private interest in the outcome of the suit. Appx. 20-22. Thus, the court found that it had subject matter jurisdiction to hear the case. Id.

[5] That no evidence was received did not stop the trial court from challenging the Complaint's factual assertion that the vessels were sent with a hostile purpose. The court based its finding upon a New York Times article that indicated a Nobel Peace Prize winner was among the activists. The challenge to the truthfulness of the Dr. Bauer's Complaint was unwarranted. And, the New York Times article is evidence of nothing except perhaps a prejudicial bias against Dr. Bauer's claims.

The court, however, held that despite Dr. Bauer's interest in the outcome of the suit, Section 962 did not provide Dr. Bauer either explicitly or implicitly with a private cause of action. Appx. 23-29. The trial court dismissed the action for failure to state a claim upon which relief may be granted. Dr. Bauer filed this appeal.

**SUMMARY OF THE ARGUMENT**

For over 200 years, the Neutrality Act and other contemporaneously-enacted bounty statutes were understood by both Congress and the courts to provide a private right of action. The trial court erred in finding that the law had somehow changed, notwithstanding that Congress never amended the bounty provision and no court had ever held that the Neutrality Act's bounty provision lacked a private right of action.

The private right is not explicitly contained within the words of Section 962. However, the authorities cited by the district court and discussed below demonstrate that even without writing the words, "an informer may bring a civil action," the bounty provision of Section 962 meant just that.

In *Marcus v. Hess*, 317 U.S. 537 (1943), the Supreme Court addressed the meaning of the bounty provision of the Neutrality Act. Even though the Statute the Statute itself contained no explicit language providing a right of action, the Court counted Section 962 among a list of "statutes providing for actions by a common

informer," Id. at 541, n. 4. The Court explained: "Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue." *Id*. Decades later, in *Vermont Agency for Natural Resources v. United States*, *ex rel Stevens*, 529 U.S. 765, 777 n.7 (2000), the Court reaffirmed this principle of statutory construction. The trial court erred in dismissing as mere *dictum*, this Supreme Court instruction.

Because Congress and the courts understood Section 962 and similar bounty statutes to provide informers with the right to sue, Dr. Bauer is not asking this Court to create a ***new*** implied cause of action, but to recognize that the private right of action ***always*** existed implicit in the meaning of Section 962 as intended by Congress.

The trial court acknowledged that early judicial interpretations of Section 962 and similarly worded informer statutes understood that Congress intended to provide informers like Dr. Bauer with a right to bring suit to recover a bounty. However, the trial court asserted that "an informer's power to bring suit has diminished over time." Appx. 29. This assertion is simply incorrect, and because it underpins the trial court's holding that Section 962 contains no private right of action, the assertion should be closely scrutinized. The cases the court cited in support of the supposed diminution of power do not actually support that proposition.

Furthermore, from a jurisprudential perspective, the court's assertion that the power to bring a private cause of action diminished represents a deviation from normative principles of legal interpretation. The meaning of a statute is based upon the intent of Congress "”expressed and fixed in a particular enactment." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 n.7. In interpreting a statute, the role of a court "is to say what the law, ***as hitherto enacted***, ***is***." *Id. (emphasis supplied)*. Thus, when it held that the meaning of a statute changed over time without legislative amendment and without authoritative judicial precedent, the trial court excised from Section 962 the private right of action that is implicit within.

Finally, the trial court purported to "buttress" its decision with three additional arguments, none of which is applicable to the facts of this case. *First*, the court observed that Section 962 implicates foreign relations and cautioned that courts should be "wary of impinging on the discretion of the Legislative and Executive Branches in managing Foreign Affairs." Appx. 30. *Second*, the court noted that while the forfeiture proceeding is not itself criminal in nature, "[p]rivate rights of action are extremely unlikely to be found in statutory language customarily found in criminal statutes." Appx. 30-31. *Finally*, the court mused as to whether acknowledging a private cause of action in the Neutrality Act would implicate the Take Care Clause of the constitution. Appx. 31-32 n.7. While

making these observations, the court refrained from actually holding that finding a private right of action in Section 962 would in fact impinge on the "political" branches' discretion in foreign affairs, or that the criminal aspects of Section 962 precluded a finding that the Statute contains a private right of action, or that such a right would violate the Take Care Clause. None of these arguments support the court's finding that Section 962 does not include a private right of action.

## ARGUMENT

## STANDARD OF REVIEW

A matter requiring statutory interpretation is a question of law, which is subject to *de novo* review. *United States v. Merrill*, 685 F.3d 1002 (11th Cir. 2012).

### A. The trial court disregarded 200 years of legal authority when it eliminated the private right of action that was implicit in Section 962.

> **"Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action *are construed* to authorize him to sue." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, n. 4 (1943); *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765, 777 n.7 (2000) (*emphasis supplied*).**

The Neutrality Act and other contemporaneously-enacted bounty statutes were understood by both Congress and the courts to provide a private right of action. Until the trial court's decision in this case, no court had ever denied that

Neutrality Act informers could initiate suit to collect their bounty. However through judicial fiat, the court eliminated that right. The trial court's decision should be reversed.

**1. The trial court erred in dismissing as "flawed" Supreme Court precedents indicating that bounty statutes like Section 962 provide informers with private rights of action.**

The Supreme Court, referring specifically to the Neutrality Act, among other statutes, has at least twice instructed that "[s]tatutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, n. 4 (1943); *Vermont Agency for Natural Resources v. United States, ex rel Stevens*, 529 U.S. 765, 777 n.7 (2000) (emphasis supplied). In its Memorandum Opinion the district court derisively labeled this principle as "*dictum*" and disregarded it as "flawed." Appx. 29-30 n. 6.

Supreme Court dicta are surely authoritative. *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) ("we cannot lightly ignore the force of Supreme Court dicta"); *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998) ("It would ill serve the interests of litigants and the judicial system as a whole to row against the tide of such statements."). The court in *Bloom* explained that "the Supreme Court often articulates positions through language that an unsympathetic audience might dismiss as dictum … and it expects these formulations to be followed." 149 F.3d

at 653. These statements enable the Court to provide guidance to the lower federal courts and to maintain consistency among them. *Id*.

Contrary to the trial court's assertion that the *dictum* is "flawed,[6]" the Court in *Marcus v. Hess* was providing historical background to refute a lower court's assertion that *qui tam*[7] informer statutes were to be "regarded with disfavor." 317 U.S. at 541. The Court countered: "Qui tam suits have been frequently permitted by legislative action, and have not been without defense by the courts." *Id*. In support of the assertion that Congress frequently enacted informer suits, the Court cited a predecessor to Section 962 as an example of such legislation. *See id. n.4*. The Court wrote:

> "Statutes providing for actions by a common informer, who himself has no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government," *Marvin v. Trout*, 199 U.S. 212,

[6] The district court claimed the dictum was "flawed" because it cited to a case, *Adams v. Woods*, 6 U.S. 336 (1805), "in which the statute that expressly authorized informer suits." Appx. 29-30 n.6. In fact, the Adams Court held, "In this particular case ***the statute which creates the forfeiture does not prescribe the mode of demanding it***; consequently, either debt or information would lie." *Adams v. Woods*, 6 U.S. 336, 341 (U.S. 1805) (*emphasis supplied*). If the Marcus Court took some liberty interpreting this holding it may be excused, especially since, as discussed below, ***many*** other cases support the same proposition.

[7] As the Court explained in *Stevens*, "Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone. " 529 U.S. at 769 n.1 (citation omitted).

225. ***Some such statutes are 18 U. S. C. § 23 (arming vessels against friendly powers)***; 31 U. S. C. §§ 155, 163 (breaches of duty by the Treasurer or the Register of the United States); 25 U. S. C. §§ 193, 201 (protection of Indians); and see footnote 9, infra. For a statute dealing with the allocation of costs in penal actions brought by an informer, see 28 U. S. C. § 823. Statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue, *Adams v. Woods*, 2 Cranch 336.

*United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 n.4 (U.S. 1943)(emphasis supplied).

Surrounding the reference to the Neutrality Act with the language from *Marvin v. Trout* referring to "statutes ***providing for actions*** by a common informer" at the beginning of Footnote 4, and the "***dictum***" from *Adams v. Woods*, at the end of the footnote, the Court surely understood the Neutrality Act to be among the "statutes providing for actions by common informers."[8] This "*dictum*" was not some throw-away comment by the Court. It was a reasoned opinion, supported by authority, demonstrating that informer actions were in fact favored by

[8] In its Statement of Interest, the Government admitted that under *Marcus*, the predecessor to § 962 included an ***implied*** right of action for the informer. See Statement of Interest at 12 n.7.

Congress, and indicating that the bounty provision of the Neutrality Act was among the statutes providing for such actions.

Almost sixty years later, the Court reaffirmed the *Marcus v. Hess dictum*. *Stevens*, 529 U.S. 765, 777 n.7. The issue in *Stevens* was whether a relator under the False Claims Act, 31 U.S.C. §§ 3729-3733, enjoyed Article III standing to sue on behalf of the government. In answering the question in the affirmative, the Court found that informer actions were prevalent, both in England and, more importantly, in the United States "at least in the period immediately before and after the framing of the Constitution." *Stevens*, 529 U.S. at 776. This, of course, was the time frame in which the Neutrality Act was enacted.

The Court recounted the history of informer statutes in England and America to establish that traditionally, *qui tam* actions were considered to be "cases and controversies of the sort that were traditionally amenable to and resolved by the judicial process." *Id*. at 777. In doing so, the Court listed in footnotes ***numerous*** informer statutes, that had been enacted by the First Congress[9]. *Id*. at 777, n. 6 and n.7. In Footnote 7, the Court listed several statutes that provided a bounty without explicitly including a private right of action. *Id*. at n.7. At the end of the footnote, the Court quoted the *Marcus v. Hess dictum*: "statutes providing for a reward to in-formers which do not specifically either authorize or forbid the informer to

[9] The Neutrality Act is not listed in the Stevens footnote because it was enacted in 1794, four years after the First Congress sat.

institute the action are construed to authorize him to sue." *Id*. Taken in context, the Court was asserting that bounty statutes that provided no express right of action were nonetheless construed to include an implied right for the informer to sue. And because the informer enjoyed a right to sue, the cited statutes provided additional support for the Court's finding that informers enjoyed Article III standing.

A close reading of the Supreme Court's reliance upon the *Marcus v. Hess dictum* shows that the Court had researched the question and drawn sound conclusions that should guide other courts interpreting statutes that provide a bounty but are silent as to a right of action, and among them, Section 962.

A number of subsequent lower courts decisions have called into question the *Marcus* dictum. *See e.g., Connecticut Action Now, Inc. v. Roberts Plating Co*., 457 F.2d 81, 84 (2d Cir. 1972); *Jacklovich v. Interlake, Inc*., 458 F.2d 923, 925 and n. 6 (7th Cir. 1972) (*citing cases*). Most cases critical of *Marcus* involved attempts by private individuals to enforce provisions of the Rivers and Harbors Act of 1988. Unlike Section 962, the Rivers and Harbors Act clearly indicates that the right to sue is relegated to the government alone. In *Connecticut Action Now*, 457 F.2d at 84-85, for example, the statute provided that "the Department of Justice shall conduct the legal proceeding," and "it shall be the duty of United States attorneys to vigorously prosecute all offenders." The court there held, "we find that the

legislation in this case is not neutral but leans strongly toward preclusion of the private informer." 457 F.2d at 85. Thus, to the extent these cases criticize the *Marcus dictum*, their criticism appears gratuitous, and is itself is mere *dictum*. It also conflicts with other similar statements from the Supreme Court. *See e.g.*, *Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others").

Note also that by the time the Court decided *Stevens* in 2000, it had the benefit of a large number of lower court decisions as well as scholarly articles that had discussed the *Marcus dictum*. The Court was surely aware of the range of criticisms of *Marcus*, including those that led the trial court here to deem the dictum "flawed." However, none of this commentary caused the Court to re-think, withdraw, or simply ignore the dictum. Instead, the *Stevens* Court reaffirmed the principle of Marcus and applied the dictum without comment.

**2. Numerous courts have held Section 962 and other similar statutes to provide a private right of action to informers**.

Looking beyond the mere ***authority*** of the Supreme Court, there is a second reason to take seriously the *Marcus dictum*: it happens to be right, and finds support in numerous prior judicial decisions. The district court itself acknowledged as much when it wrote: "At the time the Neutrality Act was drafted, contemporaneous informer statutes were construed by some courts to allow an

informer to bring suit."[10] Appx. 27. Among the authorities cited by the court was *United States v. Tilden*, 28 F. Cas. 179 (C.C.D. Mass. 1859). There, the defendant objected to an indictment, asserting that the act, which provided a bounty for an informer, allowed enforcement only through "an action or information for the penalty." The court agreed. "It is laid down by Mr. Justice Story in Ex parte Marquand [Case No. 9,100], that at common law, wherever a penalty is given, and no appropriation or method of recovery is prescribed by the act, an action or information of debt lies, and not an indictment." Id. at 180. The court noted that While, the statute did not indicate ***how*** an informer could pursue his or her remedy, such a provision was unnecessary, "because it was already a part of our law, that when a statute gives part of a penalty to anyone who will sue for the same, an action or information of debt is the proper remedy." *Id*. The court concluded that the primary means of enforcing such a statute was through an independent action of an informer. *Id*.

Similarly, in *United States v. Laescki*, 29 F. 699 (N.D. Ill. 1887), the informer statute provided in relevant part: "Every person who violates this section shall be liable to a penalty of one hundred dollars, recoverable, one-half to the use of the informer." *Id*. The statute contained no express authorization for informers

---

[10] The trial court indicated that only "***some***" courts had allowed informers to bring suit. However, the trial court failed to cite any contemporary decisions that held otherwise.

to sue. The action was initiated when the United States indicted *Laescki* for violating the statute. The defendant moved to quash the indictment on the basis that the quoted language limited enforcement to informers. The court agreed with the defendant and quashed the indictment. It was absolutely clear to the *Laescki* court that an informer could initiate the action.

The trial court also cited *United States v. Skinner*, 27 F. Cas. 1123 (C.C.D.N.Y. 1818), a Neutrality Act prosecution initiated by an informer. The *Skinner* court held that "any individual" could initiate an action for violation of the Neutrality Act, regardless of government participation or approval. In *Gelston v. Hoyt*, 16 U.S. 246 (1818), another Neutrality Act case, the Supreme Court explained that at common law "if the party be entitled to any part of the forfeiture, (as the informer under the statute of 1794, ch. 50. [The Neutrality Act] is by the express provision of the Law,) there can be no doubt that he is entitled in that character to seize." In *City of Mexico*, 28 F. 148 (S.D. Fla. 1886), by informing of a of a violation of the Statute, the crew compelled a hearing before a consular officer and obtained seizure of the vessel. And, as discussed above, the Supreme Court held in *Adams v. Woods*, 6 U.S. 336, 341 (1805), "almost every fine or forfeiture under a penal statute, may be recovered by an action of debt as well as by information." The *Adams* Court concluded: "In this particular case the statute

which creates the forfeiture does not prescribe the mode of demanding it; consequently, either debt or information would lie." *Id*.

**3. Cases cited by the court for the proposition that the right of Neutrality Act informers to sue had diminished over time are inapposite.**

After acknowledging the wide-ranging historical authority supporting the right of an informer to sue, the district court asserted that by the 20th century, courts retreated from the view that private informers could initiate an action under the Neutrality Act. Appx. 28, *citing Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911) and *The Venus*, 180 F. 635 (D. La. 1910). *Olivier* and *The Venus* were in fact the same case. Thus, to the extent they depart from the traditional Neutrality Act jurisprudence, these decisions can be viewed as a single aberration. Neither case cited any other authority, and neither has ever been cited in a published decision. However, their deviation from prior authority was overstated in the district court's decision.

In *The Venus*, 180 F. 635, an individual informer initiated an action to forfeit the vessel under a predecessor of § 962. The Government opposed the forfeiture and moved to dismiss. The government did not challenge the informer's right to sue, or the subject-matter jurisdiction of the court. Rather, the government argued that because the informer sues on behalf of the government, the latter retains the power to object to the action and obtain dismissal.

The court accepted this argument and dismissed the informer's action. In passing, the court commented, "It may be that [the informer] had the right to institute the action, but as to this I express no opinion." 180 F.635. If any inference can be drawn from this decision, it is that both the court and the government believed the informer ***could*** initiate the action, and they needed to identify some other basis to justify dismissal. If the *Venus* trial court believed that the statute did not provide a private right of action, it would have relied on that principle to dismiss the case, and at most, would have cited the government's control of the forfeiture as a secondary ground for dismissal.

On appeal, the Fifth Circuit in *Olivier v. Hyland*, 186 F. 843 (5th Cir. 1911), held only that the United States maintains the right to dismiss a forfeiture initiated by an informer. This decision too implies that the court and parties understood that where the United States does not intervene to dismiss, the informer may proceed with the forfeiture action. This understanding is consistent with *Marcus* as reaffirmed in *Stevens*.

It may be argued that in this case, as in *The Venus*, the Government here appeared and moved to dismiss, and that the result should be the same. In fact, Government's intervention in *The Venus* is easily distinguishable from its Statement of Interest in the instant case. In *The Venus*, the United States had intervened and ***repudiated*** the forfeiture on the merits. That situation was

distinguishable from the instant case, where the Government limited its arguments in both filings to the ***procedural*** question of whether Dr. Bauer could initiate and maintain his action. The Government conspicuously never offered a statement regarding the Government's interest in allowing the Defendant Vessels to be forfeited or in having such forfeiture blocked. In this regard, despite the title of the document, the Government did not actually file a Statement of Interest so much as if offered advisory opinions regarding the purely legal question of whether Dr. Bauer had standing to sue.

Moreover, the *Olivier* court's ruling affirming the decision in *The Venus*, was based upon the incorrect assumption that the forfeiture was ***criminal*** in nature and could only be brought in the name of the United States. This holding was in direct conflict with the Supreme Court's decision only 13 years earlier in *The Three Friends*, 166 U.S. 1, 50-51 (1897). There, the Supreme Court held that the civil forfeiture provisions of the Statute "are wholly independent" from the criminal provisions. *Id*. at 50. The forfeiture action "is a civil suit in rem for the condemnation of the vessel only, and is not a criminal prosecution."

### B. The trial court stated no sound basis for finding that Neutrality Act informers' right to sue had diminished over time.

The court cited *The Venus* and *Olivier* for the proposition that "an informer's power to bring suit has diminished over time." Appx. 29. As discussed above, these cases do not indicate any significant retreat from the prior common law

understanding of informer statutes. On the contrary, they implicitly suggest that had the government not intervened, the informer could have proceeded with the action. Moreover and more importantly, as the trial court recognized, the Neutrality Act "was enacted in 1794 and has rarely been invoked since." Appx. 16. The court did not explain ***how*** the power to sue of a Section 962 informer had "diminished over time" in the absence of Congressional action.

The trial court cited *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725 (2004) when it stated "even if historical custom may have allowed a private suit at the time it was drafted, 'the prevailing conception of the common law has changed since 1789 in a way that counsels restraint today.'" Appx. 29. This argument is inapplicable for at least two reasons. Section 962 is a ***statute*** that was enacted as an expression of the intent of the Congress of 1794. It is not a "historical custom." Furthermore, the fact that the common law may be a living, evolving body that is subject by its nature to some evolution, says nothing about the meaning of a statute. As the Supreme Court held in *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 n.7, in interpreting a statute as the will of Congress,

> [t]he "will of Congress" we look to is not a will evolving from Session to Session, but a will expressed and fixed in a particular enactment. Otherwise, we would speak not of "interpreting" the law but of "intuiting" or

"predicting" it. Our role is to say what the law, as hitherto enacted, is; not to forecast what the law, as amended, will be.

The trial court recognized the meaning given to the Statute by the enacting Congress included a private right of action. As support for the proposition that Section 962 had undergone a metamorphosis, the trial court relied on a decision (*The Venus*, 180 F. 635) that, by its terms, "express[ed] no opinion" as to whether the informer "had the right to institute the action." If a Section 962 informer's right to bring suit has in fact diminished, it did so only upon the trial court's ruling dismissing Dr. Bauer's case, and not sooner. The court misinterpreted the Statute and the court's holding should be reversed. By finding no cause of action exists under Section 962, the court judicially repealed the right of action created by Congress when it enacted the Statute.

Ironically, the district court asserted "The plaintiff insists that a private cause of action may be ***judicially implied***." Appx. 26 (emphasis supplied). This statement is a gross misunderstanding of Dr. Bauer's argument. Dr. Bauer did not argue that the private cause of action should be ***judicially implied***. Rather, Dr. Bauer argued that Congress itself understood that the words it used and the remedies it provided implicitly created the cause of action. By finding no cause of action exists under Section 962, the court, by judicial fiat, repealed the cause of action created by Congress when it enacted the Statute.

### C. The trial court improperly attempted to "buttress" its holding with inapplicable arguments that neither on their own nor in combination should affect the outcome of this case.

After holding that Section 962 provides no private right of action the court asserted that its decision is "buttressed" by two additional factors. In a footnote, the court added an additional argument in support of its holding. The court failed to flesh out any of these arguments, and had it done so, it would have recognized that they are inapplicable.

***First***, the court stated the principle that "courts should be particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." Appx. 30. To apply this principle here, the court would have to overrule virtually all of the Neutrality Act cases cited above that allowed private informers to sue or even seize vessels. The Government in its Statement of Interest cited *The Three Friends*, 166 U.S. 1, 63 for the proposition that "it belongs to the political department to determine when belligerency shall be recognized, and its action must be accepted according to the terms and intentions expressed." Statement of Interest at 9. This quotation was taken out of context. The Court there did not hold that private informers cannot sue in the first instance. Rather it held that a court should defer to the executive's factual determination of whether conduct should be deemed belligerency. *Id*.

***Second***, the trial court attempted to buttress its decision arguing that "private rights of action are extremely unlikely to be found in statutory language customarily found only in criminal statutes." Appx. 31. It is questionable whether the bounty provision of Section 962 is statutory language found ***only*** in criminal statutes. Many civil statutes contained similar language.

Moreover, , several of the statutes listed in *Stevens*, 529 U.S. at 777, n. 7, as well as Section 962's predecessor, which was discussed in *Marcus, 317 U.S. at 541, n. 4*, were ***criminal*** statutes that included bounties for informers but no express right of action. Nonetheless, the Supreme Court instructed that they were to be construed to authorize the informers to sue.

***Finally***, in a footnote, the trial court suggested that allowing the private right of action in 962 "could raise constitutional concerns." Appx. 31 n.7. The court explained, "Ordinarily, an informant statute must provide the Executive branch with means to control the litigation; otherwise, individual litigants might derogate the Executive's duty to "take Care that the laws be faithfully executed." *U.S. Const. art. II, § 3*." *Id*. Again, to apply this rationale as an absolute bar to private actions under the Neutrality Act would overrule most if not all of the cases that found such a right to exist. This principle would similarly render unconstitutional most, if not all of the informer statutes whether or not they explicitly provided a cause of action. As the trial court itself quoted from *Canning v. NLRB*, 705 F.3d 490, 495

(D.C. Cir. 2013), "When interpreting a constitutional provision, we must look to the natural meaning of the text as it would have been understood at the time of the ratification of the Constitution." Appx. 26-27. The *Stevens* Court cited approvingly numerous statutes that were enacted at the same time as the Constitution. Many of these expressly provided for private causes of action by informers, and those that did not do so explicitly did so implicitly. The trial court's rationale would render those statutes unconstitutional.

Additionally, Dr. Bauer has not argued that the Government lack any means to control Neutrality Act litigation. That question was not raised in the trial court, and it is not an issue here. The only issue as to the Government's control that was raised in the trial court was whether the Government's opinion as to standing is entitled to deference.

The Government chose to oppose Dr. Bauer's action on the basis of standing alone. It did not oppose the action on any other grounds. Therefore the Court should not assume that the Government opposes this action on any other grounds. If and when the Government raises other objections, the applicability of the Take Care Clause ***may*** become relevant. At this juncture, and on a record in which no evidence has been taken, any ruling on the Take Care Clause would be premature.

The Court's attempt to "buttress" its holding should be read not as additional support for an otherwise sound ruling, but as an series of unsound arguments

offered to justify an unsound ruling that deviated from over 200 years of jurisprudence.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Dated, September 17, 2013

Respectfully Submitted,

/s/ Asher Perlin________
ASHER PERLIN
Florida Professional Law Group, PLLC
1799 West Oakland Park Boulevard
Third Floor
Fort Lauderdale, Florida 33310
954-302-3026
asher@asherperlin.com
Attorney for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(A) and (C) of the Federal Rules of Appellate Procedure, I hereby certify that this brief uses a proportionately spaced font and contains 7431 words exclusive of those portions that are excluded under Rule 32(a)(7)(B)(iii).

/s/ Asher Perlin________
Asher Perlin

**CERTIFICATE OF SERVICE**

I hereby certify on September 17, 2013, I filed the foregoing using the ECF system, which automatically served a copy upon Vijay Shanker, Esq., vijay.shanker@usdoj.gov.

/s/ Asher Perlin ____________
Asher Perlin